IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KAMILA RITHMIXAY,

    Plaintiff,

v.

AUTOZONERS, LLC, et al.,

    Defendants.

Case No. 2:21-cv-02332-HLT

## MEMORANDUM AND ORDER

Plaintiff Kamila Rithmixay brings Title VII sexual harassment and retaliation claims and a state-law battery claim against her former employer Defendant AutoZoners, LLC ("AutoZone"). Doc. 1. She also brings a state-law battery claim against former AutoZone employee Defendant Cristian Perez. *Id.*

AutoZone moves for summary judgment on all claims against it. Doc. 59. Because Plaintiff fails to show that Perez was her supervisor or that AutoZone was otherwise negligent, her Title VII hostile work environment claim fails. Plaintiff also fails to show that she suffered a tangible employment action or that Perez was acting within the scope of his employment, so her Title VII retaliation claim and her state-law battery claim against AutoZone also fail. The Court thus grants AutoZone's motion for summary judgment. Plaintiff's battery claim against Perez remains.

### I.   BACKGROUND[1]

Plaintiff worked for AutoZone from June 2020 to February 5, 2021. Doc. 68 at 2, 4. Hector Bernal was the manager of Store 1646. *Id.* at 2. Bernal hired Plaintiff as a part-time commercial

---

[1] The Court relies on undisputed facts and construes any disputed facts in the non-moving party's favor. Additional facts are included throughout the order. Plaintiff argues that because Perez did not serve any objections or responses to Plaintiff's first request for admissions, those facts are deemed admitted as to AutoZone for purposes of summary

driver for Store 1646. *Id.* Store 1646 was "a little less than ten minutes" from Plaintiff's home. Doc. 60-1 at 13.² Plaintiff made $9.50 an hour when she started. Doc. 68 at 2. Plaintiff delivered to and picked up parts from commercial accounts. *Id.*

Perez was a commercial sales manager at Store 1646 from February 10, 2019, to January 19, 2021. *Id.* Perez had worked for AutoZone since 2005, and had previously held the positions of commercial driver, parts sales manager, and assistant store manager. *Id.* Both Perez and Plaintiff reported to Bernal. *Id.* Bernal reported to the district manager, Richard Fortner. *Id.* Plaintiff knew that both she and Perez reported to Bernal. DSOF 7.

Perez lacked the authority to demote any employee.³ DSOF 6. Plaintiff knew that Perez could not hire anyone because that was Bernal's job. DSOF 5; Doc. 60-1 at 39. Plaintiff also knew that Perez could not fire anyone. DSOF 5.⁴ And Perez never told Plaintiff that he could fire or demote anyone. Doc. 70-1 at 39-40. But Plaintiff testified that she still assumed that Perez was

---

judgment under Rule 36. Doc. 69 at 7 n.3. But generally, "[d]eemed admissions by a party opponent cannot be used against a co-party." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997). Plaintiff cites no caselaw, and the Court is aware of none, that would allow it to consider Perez's admissions in ruling on AutoZone's motion. *Cf. Lundquist v. United States*, 1997 WL 355933, at *3 (9th Cir. 1997) (allowing admissions against co-party when co-party did not object and affirmatively stipulated to the admissibility of the admissions). Therefore, the Court does not consider Perez's deemed admissions in considering AutoZone's motion for summary judgment.

² Plaintiff tries to contradict her deposition testimony by directing the Court to Google Maps. *See, e.g.*, PSOF 2. But the Court's analysis does not change if Plaintiff's commute was slightly shorter than her testimony indicates.

³ Plaintiff tries to controvert this fact by citing to her deposition testimony that Perez informed her when she was receiving driving violations and had presented a corrective action form to her on at least one occasion. This evidence does not meet the substance of the fact. Regardless, the record shows that the driving violations were automatically generated from the company vehicle when Plaintiff violated the speed limit or came to a quick stop. Doc. 70-4 at 14-16. All of Plaintiff's corrective action forms for these "telematic" violations were submitted by either a store manager or an assistant store manager. Docs. 60-5, 60-6, 60-7, 60-10, 60-11. All of Plaintiff's corrective action meetings were with either a store manager or an assistant store manager. *Id.* All corrective actions were approved by Fortner or Louise Rinke, the regional human resource ("HR") manager. *Id.* There is no evidence that Perez was the source of these violation reports or the corresponding corrective action. Therefore, any involvement Perez had in telling Plaintiff about her driving violations or that she needed to sign a corrective action form goes to whether he had apparent authority rather than actual authority.

⁴ Plaintiff tries to controvert this fact by citing to her deposition testimony. But the testimony supports the fact. Doc. 70-1 at 36-37 (Q: And you also knew that Mr. Perez did not have the authority to fire employees, correct? A: "Well, whenever something bad did happen, I reported it to [Perez] and [Perez] would report that to [Bernal], <u>yes</u>." (emphasis added)).

2

"somebody in power enough to fire somebody" because he had been with AutoZone for "a while." *Id.* at 39.

Beginning in June of 2020, some commercial customers started touching Plaintiff's hand when she handed them a part, flirting with her, and saying they wanted to marry her. Doc. 68 at 3. Specifically, Plaintiff experienced this behavior at three commercial shops during deliveries. Doc. 60-1 at 44-45. There is also evidence that these customers would hug her and refer to her as "wife" when she arrived with deliveries. PSOF 4. Meanwhile, Plaintiff told Perez and Bernal that she was going to pursue a job at Wal-Mart because Wal-Mart paid more money. Doc. 60-1 at 31-32; Doc. 70-4 at 17; Doc. 70-33. Subsequently, Plaintiff was promoted to a parts sales manager position in late August of 2020 and was given a pay raise to $12.10 an hour. Doc. 68 at 3. But Plaintiff continued making deliveries to and picking up parts from commercial customers. *Id.*

Before December 7, 2020, Plaintiff had complained of back pain to Perez and occasionally allowed him to massage her back and shoulders. *Id.* Plaintiff did not have any problem with Perez's conduct towards her on those occasions. *Id.* On December 7, Plaintiff complained that her back was hurting from carrying heavy auto parts to her car. PSOF 16. Perez massaged Plaintiff's back. PSOF 17. Shortly thereafter, Plaintiff's back was still hurting so Perez massaged her a second time. PSOF 18. Later, Plaintiff was still in pain, so Perez and Plaintiff went into the men's bathroom where Perez unclipped Plaintiff's bra, lit a paper cone with a lighter, and ran it over Plaintiff's back. PSOF 19-20.

Around 5:40 p.m. that same day, Perez told Plaintiff that he had some cream that would help with her back pain. PSOF 21. Perez clocked out before going to the bathroom with Plaintiff for the second time that day. Doc. 70-1 at 59, 62. This time Perez and Plaintiff went into the women's restroom *Id.* at 64. Perez unhooked Plaintiff's bra and put cream on her back. *Id.* at 65.

3

After Perez put the cream on Plaintiff's back, Perez massaged Plaintiff's stomach and stuck his hand inside Plaintiff's underwear and massaged Plaintiff's "bikini area." *Id.* at 65-68. Perez also groped Plaintiff's breasts. *Id.* at 73. After Perez "removed his hands from Plaintiff's breasts, Plaintiff clipped her bra back, and they both exited the restroom." PSOF 34. Plaintiff clocked out after leaving the restroom and went home. PSOF 36.

Perez sent Plaintiff a scripture passage in Spanish at approximately 6:04 p.m. PSOF 38. Plaintiff responded

> I don't like that you touched me in the wrong places. But please don't touch me ever again. I didn't know what you were trying to do. That was wrong and you know it was wrong. I'm not going to tell anyone what happened. But I don't want you to touch me anymore.

PSOF 40.

That same night, Plaintiff called Bernal on his cell phone and alleged that Perez had touched her and made her feel uncomfortable in the bathroom earlier that evening. Doc. 68 at 3. Bernal advised Plaintiff that he would report the allegations to Fortner. *Id.* Bernal told Plaintiff to work at Store 1628 the following day. *Id.* Store 1628 was about a fifteen-minute drive from Plaintiff's home. PSOF 43. Plaintiff reported to work at Store 1628 on December 8, 2020. Doc. 68 at 3. She still worked as a parts sales manager at the new store and received the same pay. *Id.* Plaintiff never worked with or saw Perez again after December 7, 2020. *Id.* Plaintiff worked at Store 1628 until the end of her employment with AutoZone on February 5, 2021. *Id.*

Louise Rinke was the regional HR manager for AutoZone and learned of Plaintiff's allegations. Rinke worked at the regional office, which was based out of Store 1628. *Id.* at 2. Rinke began her investigation into Plaintiff's allegations by interviewing Plaintiff and obtaining a written statement from her on December 9. *Id.* at 3. In her written statement, Plaintiff reported that on December 7, 2020, she voluntarily went into a bathroom with Perez so he could put cream on her

4

back, and when she did, Perez: (1) touched her breasts; (2) massaged her stomach; and (3) massaged her "bikini area." *Id.*

Meanwhile, Perez reported out of work as sick for all his scheduled shifts between December 8, 2020, and December 18, 2020. *Id.* He was then out of work due to a previously scheduled vacation from December 21, 2020, through January 1, 2021. *Id.* He returned to work for the first time since December 7 on Monday, January 4, 2021. *See* PSOF 53. Rinke interviewed Perez and obtained a statement from him on January 7. Doc. 68 at 3. Perez denied touching Plaintiff's stomach, breasts, or crotch. *Id.* Regional Manager Greg Richardson discharged Perez on January 19, 2021, for inappropriate conduct and failing to use good judgment by being with a female employee in the bathroom behind a closed door and rubbing her back. *Id.* at 4.

Plaintiff applied to work at clinical reference laboratory in early January 2021 and received an offer of employment there on January 21, 2021. *Id.* Plaintiff handed Daron Duncan, the manager of Store 1628, a letter of resignation that same day stating that her last day would be February 5, 2021. *Id.* Duncan told Plaintiff he did not want her to quit and asked if there was anything he could do. *Id.* Plaintiff told Duncan there was nothing he could do to get her to stay. *Id.* Plaintiff worked out her notice period at Store 1628. *Id.* Plaintiff began her employment with the laboratory on February 10, 2021, earning $13 an hour as a sample processing clerk. *Id.* Plaintiff filed a charge of discrimination with the EEOC in February 2021, received her notice of right to sue in May 2021, and this timely suit followed. *See* Doc. 1 at 3.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v.*

5

*Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**III.   ANALYSIS**

Plaintiff alleges a Title VII sexual harassment claim, a Title VII retaliation claim, and a state-law battery claim against AutoZone. AutoZone seeks summary judgment on all claims against it. Perez does not move for summary judgment on the state-law battery claim against him. The Court thus analyzes each claim against AutoZone.

**A.   Sexual Harassment**

AutoZone initially seeks summary judgment on Plaintiff's claim that it violated Title VII by subjecting her to a hostile work environment based on her sex. Doc. 69 at 50-70. A plaintiff overcomes summary judgment on a hostile-work-environment claim by first showing that (1) she was discriminated against because of her sex, and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021). "Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." *Id.* at 1252. A plaintiff must, however, "show that the environment was both objectively and subjectively hostile or abusive." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (citation omitted). A court must evaluate the totality of the circumstances and "consider such factors as the frequency

of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Throupe*, 988 F.3d at 1252 (citation omitted).[5]

Here, AutoZone does not contest that Plaintiff's ill-treatment was sex-based. But the parties do dispute when the work environment became hostile. Plaintiff contends the customer contacts rendered her work environment hostile while AutoZone contends the work environment became hostile only after Perez's conduct on December 7 because Plaintiff's treatment by three of AutoZone's commercial customers was insufficient to constitute severe or pervasive discrimination.

The Court agrees with AutoZone because no reasonable jury could find the customer contacts were severe or pervasive. Plaintiff does not argue that the customer treatment was severe. And she has not presented sufficient evidence for a reasonable jury to find that she faced pervasive discrimination. On this record, the brief offensive flirting and fleeting physical contact by three customers were not the "steady barrage" of opprobrious comments necessary to survive a summary judgment motion. *Morris*, 666 F.3d at 666. Plaintiff subjectively found the customer conduct unwelcome, but "[l]itigation by perception" alone does not survive summary judgment. *Mendoza v. Borden*, 195 F.3d 1238, 1257 (11th Cir. 1999) (en banc) (Carnes, J., concurring). Rather, "Title VII requires a baseline of objectively offensive conduct." *Id.* at 1256. Here, the record on customer comments, compliments, and brief instances of physical contact does not establish objectively pervasive harassment. *See id.* at 1247 (majority opinion) (holding harassment was not pervasive

---

[5] The parties in this case largely discuss the commercial customers and Perez separately even though the standard for hostile work environment is totality of the circumstances. The Court's order tracks the parties' arguments, but the Court has also examined the totality of the circumstances in considering Plaintiff's claims and reaching this outcome.

when supervisor constantly followed and stared at plaintiff in an obvious fashion and accompanied the stares with instances of sniffing and physical contact).

The Court thus finds (and AutoZone does not dispute) that the instance of harassment with Perez was sufficient to constitute severe harassment. Thus, for purposes of summary judgment, the Court concludes that Plaintiff's work environment became hostile on December 7, 2020. From that point on, Plaintiff does not allege that she made deliveries to the three commercial customers who had made her uncomfortable. And there is no evidence that she returned to those customers after December 7. Thus, AutoZone did not behave inappropriately with regards to the commercial customers once any duty to act was triggered. The Court thus focuses its analysis on whether Plaintiff's claim for hostile work environment based on the harassment by Perez on December 7 survives summary judgment.

The issue at this point is whether AutoZone is liable for Perez's harassment either through vicarious liability or negligence. Generally, "an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 737 (10th Cir. 2014) (citation omitted). "If the harasser is a supervisor rather than merely a co-worker, however, the employer may be vicariously liable for the conduct, depending on the circumstances." *Id.* The Court initially addresses whether Perez was Plaintiff's supervisor such that vicarious liability may apply and, if not, will turn to negligence.

1. **No reasonable jury could find that Perez was Plaintiff's supervisor.**

The initial issue is whether Perez was Plaintiff's supervisor. "Supervisory status can usually be readily determined, generally by written documentation." *Vance v. Ball State Univ.*, 570 U.S. 421, 432 (2013). Moreover, "supervisor status will generally be capable of resolution at

8

summary judgment." *Id.* at 441. An individual is a supervisor when the employer has "empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* at 431 (citation and italics omitted). The Tenth Circuit has interpreted this standard to include an employee who can recommend or substantially influence tangible employment actions. *Kramer*, 743 F.3d at 738. Additionally, an employer can be liable if an employee <u>appears</u> able to substantially influence tangible employment actions. *See id.* at 739. Under this apparent authority theory, however, a victim's mistaken conclusion that an employee was her supervisor must be reasonable. *Id.* at 741.

Plaintiff argues that Perez was her supervisor because he could impact the employment status of others indirectly through recommendations because the ultimate decisionmaker did not work directly with Plaintiff. Doc. 69 at 58. Specifically, Plaintiff points to evidence in the record that when she wanted a pay raise, Perez said he would discuss it with Bernal and Plaintiff ultimately received a pay raise. *Id.* Additionally, Perez informed Plaintiff on several occasions when she had received a corrective action for her delivery driving. *See id.* On one occasion, Perez gave Plaintiff the corrective action form to sign. *Id.* Perez's job description stated that he was to provide feedback on other employee's performance to the store manager and he sometimes sat in on meetings where Bernal gave employees corrective action forms. *Id.* Perez mentored at least three employees for promotion and all of them were promoted. *Id.* Finally, Plaintiff argues in the alternative that Perez was her supervisor under apparent authority principles because he was often the highest-ranking person in the store, wore a gray shirt only worn by management employees, and his job duties involved many responsibilities that appeared supervisory. Doc. 69 at 59.

AutoZone argues that all of this does not matter. Specifically, AutoZone argues that Perez's recommendation to Bernal is insufficient to establish sufficient influence over a decisionmaker because Bernal was not the final decisionmaker. Doc. 74 at 50-52. Moreover, the record shows that Plaintiff also went directly to Bernal to request a pay raise, and the final decisionmaker was ultimately Fortner. *Id.* at 52. And regarding the apparent authority theory, Plaintiff could not reasonably and prudently believe that Perez was her supervisor when Perez did not write her performance evaluations and never told her that he could fire, demote, transfer, or otherwise affect her employment. *Id.* at 52-53.

The Court finds that Perez was not Plaintiff's supervisor under either actual or apparent authority principles as a matter of law. Regarding actual authority, advocating for a coworker to get a promotion or a raise to a mutual manager does not transform someone into a supervisor. Nor is one transformed into a supervisor by telling a coworker that she got an automatically generated driving violation or that she needed to sign a corrective action form. Generalized leadership and mentorship duties to more junior employees are also insufficient.

There is also no evidence that Perez was the proximate cause of Fortner's decision to approve Plaintiff's promotion and pay raise or of Fortner's and Rinke's decisions to approve Plaintiff's corrective actions. *See Kramer*, 743 F.3d at 741. Plaintiff discussed a pay raise with Perez, but she also discussed it with Bernal. Doc. 70-33. Plaintiff got the raise after Bernal spoke with Fortner. *See* Doc. 70-4 at 17. Plaintiff also testified that Bernal was at the store at least two days a week and that Bernal was the one responsible for her pay raise. Doc. 74-4 at 5. Moreover, when Perez assaulted Plaintiff in the bathroom, Plaintiff reported the incident to Bernal. Doc. 68 at 3. Bernal reported the incident to Fortner. Doc. 70-4 at 21-23. Therefore, Perez did not have actual authority to substantially influence tangible employment actions with regards to Plaintiff.

10

Regarding apparent authority, any conclusion by Plaintiff that Perez was her supervisor was not reasonable. Plaintiff makes much of the fact that Perez wore a gray shirt only worn by management employees. At the time of the assault, Plaintiff also wore a gray management shirt. *See* Doc. 70-1 at 26-27. Plaintiff also argues that, because Bernal was not often in the store, a belief that Perez was her supervisor was reasonable. But, as previously noted, Bernal worked with Plaintiff at least two days a week, and he was not the ultimate decisionmaker as to Plaintiff's pay raise. And Plaintiff knew that both she and Perez reported to Bernal. This is not a situation where a harasser makes tangible-employment recommendations to a final decisionmaker who does not work directly with the plaintiff. *See Kramer*, 743 F.3d at 741. Rather, the person who directly influenced Fortner regarding tangible employment actions was Bernal, and Bernal was physically present at Store 1646 regularly. Plaintiff knew how to contact Bernal when he was not in the store and did so on multiple occasions. Therefore, Plaintiff's suggestion that Perez had apparent authority because he was sometimes the highest-ranking employee in the store is not reasonable.

Caselaw supports this result. In *Kramer*, the Tenth Circuit held there were issues of fact as to whether a sheriff's department had effectively delegated tangible employment actions to a sergeant even though the sheriff was the official decisionmaker. 743 F.3d at 741. There, the sergeant was the sole person responsible for the plaintiff's performance evaluations, and those evaluations could cause the plaintiff to be promoted, demoted, or fired. *Id.* at 739. The sergeant could also create a "corrective action" plan for the plaintiff, which could include reassignment, transfer, or separation. *Id.* at 740. Additionally, the sergeant was undisputedly a "supervisor" in the rank hierarchy. *Id.* Finally, the record was unclear if the sheriff had ever personally worked with or supervised the plaintiff. *Id.* at 741. None of these factors is present in the current case.

11

While Fortner may not have had a regular physical presence at Store 1646, Bernal certainly did, so there was no effective delegation of tangible employment actions to Perez.

*Kramer* also addressed apparent authority principles. The Tenth Circuit held in the alternative that the sergeant could qualify as a supervisor under apparent authority principles due to factors such as (1) the sheriff considered the sergeant the plaintiff's supervisor, (2) the sergeant worked with the plaintiff every day and was her only immediate manager, (3) the county had assigned the sergeant the tasks of telling the plaintiff what to do every day, evaluating her performance, and reporting her performance to higher management, (4) the sergeant could decide when the plaintiff could get vacation or sick leave, and (5) the sergeant repeatedly told the plaintiff that he had the authority to fire her. *Kramer*, 743 F.3d at 741-43.

Here, Plaintiff has not presented evidence that AutoZone considered Perez her supervisor; that Perez was her only immediate manager; that Perez controlled the days she worked, took vacation, or sick leave; or that Perez ever told her that he had the authority to fire or otherwise take a tangible employment action with regards to her. To the extent that there is evidence that Perez played some role in assigning Plaintiff tasks or reporting her performance to management, that is insufficient to make Perez Plaintiff's supervisor. *See McCafferty v. Preiss Enter., Inc.*, 534 F. App'x 726, 731 (10th Cir. 2013) (holding shift manager's power to direct day-to-day assignments did not make him a supervisor and that supervisory power had not been imputed to him because managers who could take tangible employment actions were present nearly every day); *Chavez-Acosta v. Sw. Cheese Co.*, LLC, 610 F. App'x 722, 725-26, 730 (10th Cir. 2015) (holding employee who was part of "supervisory hierarchy" and who told the plaintiff that she would lose her job if she reported him to HR because he was friends with the production manager was not the plaintiff's supervisor).

Therefore, Plaintiff has not demonstrated that Perez was her supervisor under actual or apparent authority principles. No reasonable jury could conclude otherwise. Indeed, this outcome is reinforced by two other cases involving AutoZone. The Sixth Circuit held that the store manager (e.g., Bernal's position) wasn't even a supervisor for a parts sales manager (e.g., Plaintiff's position). *EEOC v. AutoZone, Inc.*, 692 F. App'x 280, 283-84 (6th Cir. 2017) (per curiam). And a district court recently denied summary judgment on whether the store manager (again, Bernal's position) was a supervisor for a parts sales manager (again, Plaintiff's position). *Bradley v. Autozoners, LLC*, 2022 WL 1422928, at *1, *12-13 (D. Idaho 2022). Notably, neither found that a commercial sales manager (e.g., Perez) was a supervisor to a parts sales manager (e.g., Plaintiff). Thus, Plaintiff must demonstrate AutoZone's liability for sexual harassment under a negligence theory.

### 2. No reasonable jury could find that AutoZone's response to Perez's sexual harassment was unreasonable.

Plaintiff alternatively argues that AutoZone is liable even under a negligence standard. Doc. 69 at 66-70. When a harasser is not a supervisor, a plaintiff "must show that the [defendant] had actual or constructive notice of the harassment and negligently failed to remedy or prevent it." *Kramer*, 743 F.3d at 755. A plaintiff must show that an employer's remedy was not reasonably calculated to end the harassment to show that the employer's remedy was inadequate. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998).

Plaintiff does not allege that AutoZone had actual or constructive notice of harassment by Perez before she called Bernal on December 7, 2020. Rather she takes issue with the fact that Perez was interviewed 31 days after Plaintiff reported Perez's conduct and that he was not terminated until January 19, 2021. Doc. 69 at 68-69. But Plaintiff ignores the fact that, after she reported Perez, she never worked with him again. Doc. 68 at 3. Moreover, he never harassed her again (nor

13

did any customer). *Id.* And AutoZone fired Perez about two weeks after he returned to work.[6] *See id.* at 3-4. In sum, once Plaintiff experienced harassment that rose to the level of a Title VII violation, she reported that all harassment from all sources ceased the next day.[7] *See* DSOF 39 (Plaintiff stated that she experienced no harassment while working at Store 1628).

"A stoppage of harassment shows effectiveness," which in turn shows that an employer's response was reasonably calculated to end the harassment. *Adler*, 144 F.3d at 676. Thus, no reasonable jury could conclude that AutoZone's remedy was not reasonably calculated to end the harassment once it had knowledge of the harassment. AutoZone is entitled to summary judgment on Plaintiff's hostile work environment claim.

### B.    Retaliation

Plaintiff next claims that AutoZone violated Title VII by retaliating against her by subjecting her to a constructive discharge because she complained about sexual harassment. Doc. 69 at 70-73. AutoZone argues that Plaintiff did not experience an adverse employment action. Doc. 60 at 15-18.

In the absence of direct evidence, a plaintiff must establish a prima facie retaliation case under the *McDonnell Douglas* framework by showing that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (citation omitted). "Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the

---

[6]  Plaintiff also ignores that Perez was out on either medical leave or pre-approved vacation from December 8 until January 1, 2021, and that his first day back at work was January 4. HR interviewed him three days later, and AutoZone terminated his employment about two weeks after that interview. No reasonable jury could find the timeline of this case unreasonable.

[7]  As the Court previously noted, Plaintiff did not experience a hostile work environment until Perez assaulted her in the bathroom because the actions by commercial customers did not create severe or pervasive discrimination.

defendant (i.e., employer) to come forward with a legitimate, non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." *Id.* (citation omitted).

The parties don't dispute that Plaintiff engaged in protected opposition to discrimination. Plaintiff argues she suffered an adverse action in the form of a constructive discharge. Doc. 69 at 71. Specifically, she argues that she was constructively discharged after she was transferred to a store that was further away from her home than Store 1646. *See id.* She argues that the transfer, along with a six week-period in which she was not updated on the status of the investigation into her complaint, made her employment so intolerable that she was forced to quit. *See id.* at 61-63, 71.

"Generally, an adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1222 (10th Cir. 2022) (citation omitted). An adverse employment action is not limited to situations involving monetary losses. *Id.* But "a mere inconvenience or an alteration of job responsibilities" does not qualify as an adverse action. *Id.* (citation omitted). One form of adverse action is a constructive discharge. Constructive discharge "occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit." *Id.* at 1235 (citation omitted). Conversely, "a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). "A plaintiff's burden on this claim is 'substantial.'" *Ford*, 45 F.4th at 1235 (citation omitted). Constructive discharge "entails something more than conduct that amounts to actionable harassment." *Id.* (citation omitted).

Here, Plaintiff has not shown that a reasonable person in her position had no other choice but to quit. Rather, she voluntarily resigned. Her slightly increased commute to work was a mere inconvenience and did nothing to alter her responsibilities or compensation. Three days after Plaintiff gave her two weeks' notice, Fortner told Plaintiff that the investigation into her complaint was complete, and she could work at either Store 1646 (because Perez was no longer there) or Store 1628 (where she was currently working). PSOF 77. Plaintiff voluntarily chose to work the remainder of her notice period at Store 1628. *See* Doc. 68 at 4. The fact that Plaintiff wishes AutoZone leadership kept her better informed as to the status of its investigation into her complaint does not change her voluntary resignation into a constructive discharge.

This case is like *Exum*. The Tenth Circuit held that the plaintiff had made a voluntary decision to quit, and thus had not been constructively discharged. *Exum*, 389 F.3d at 1136. There, the plaintiff's employer offered him alternatives to quitting and offered to investigate his complaints after he had submitted his resignation. *Id.* But the plaintiff insisted on quitting. *Id.* That is like this case. Plaintiff told the store manager at Store 1628 that there was nothing he could do to get her to continue working there, and she worked out her notice period at Store 1628 even after she learned that Perez had been fired and she could return to Store 1646. Thus, Plaintiff fails to make a prima facie retaliation case because she did not suffer an adverse employment action when she voluntarily resigned. No reasonable jury could find otherwise. Therefore, AutoZone is entitled to summary judgment on Plaintiff's retaliation claim.[8]

---

[8] Plaintiff relies on caselaw that is not binding and largely inapposite. For example, unlike *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612 (8th Cir. 2000), the alleged assailant here was fired after an investigation and Plaintiff was transferred away from the assailant immediately.

### C. Battery

Plaintiff brings a battery claim against AutoZone and Perez under Kansas common law. Doc. 68 at 9. AutoZone argues that it cannot be held liable for any battery committed by Perez because he was not acting in furtherance of AutoZone's business or within the scope of his employment. Doc. 60 at 18-19. AutoZone highlights that Plaintiff admits Perez was not even clocked in at the time of the alleged battery. *Id.* at 19. Plaintiff did not respond to AutoZone's argument.

An employer "can be held liable for an assault by its agents only if the agents, at the time of the alleged assault, were acting within the scope of their authority and within the course of their employment, or in an effort to further [the employer's] business." *Wesley v. Don Stein Buick, Inc.*, 42 F. Supp. 2d 1192, 1205 (D. Kan. 1999). "An employee is acting within the scope of his or her employment if the employee is performing services for which the employee has been employed or is doing anything reasonably incidental to the employment." *Id.*

Here, there is no dispute that Perez had clocked out and was not doing anything to further AutoZone's interests when he assaulted Plaintiff in the bathroom. Therefore, summary judgment for AutoZone is appropriate.[9]

### IV. CONCLUSION

The Court finds that AutoZone is entitled to summary judgment. Perez did not move for summary judgment, and Plaintiff's claim against him remains set for trial.

---

[9] The Court need not address AutoZone's alternative request for summary judgment on Plaintiff's punitive damages claim because it grants AutoZone's request for summary judgment on the merits.

THE COURT THEREFORE ORDERS that AutoZone's Motion for Summary Judgment (Doc. 59) is GRANTED. AutoZone is entitled to judgment in its favor on Plaintiff's claims against it.

IT IS SO ORDERED.

Dated: October 25, 2022            /s/ *Holly L. Teeter*
                                   HOLLY L. TEETER
                                   UNITED STATES DISTRICT JUDGE